# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>       Plaintiff, <br><br>    v. <br><br>ROBERT GEORGE and MICHAEL SPAGNOLA, <br><br>       Defendants. | Case No. 07 CR 441 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions of Defendants Robert George and Michael Spagnola for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons stated below, Defendants' motions are denied.

### I. BACKGROUND

Defendant George and Defendant Spagnola were tried together before a jury in connection with a sting operation in which George and Spagnola conspired to rob over 5 kilograms of cocaine from a disgruntled drug courier and then sell it for cash. This conspiracy came about when Jamie Ringswald (hereinafter, the "CI"), a confidential informant working on behalf of the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"), approached George in June 2007 and proposed that they help an acquaintance of the CI with a robbery. The CI told George that his acquaintance was a

drug courier, although the courier was actually an undercover ATF agent, who had been shortchanged by the drug dealer for whom he worked. The courier, now seeking revenge, wanted to steal a large amount of cocaine from a garage where the dealer stored his drugs. The problem, the CI told George, was that the robbery would require more people and guns since the courier expected the garage to be guarded by armed men.

In order to document George's agreement to participate in the robbery, the CI wore an audio and video recording device during several meetings with George. During these meetings George not only agreed to participate in the robbery in exchange for a portion of the robbery proceeds, but also suggested his brother, Spagnola, as a participant. Before long, the CI was also recording conversations between himself and Spagnola in which Spagnola eagerly agreed to participate in the robbery.

The recordings admitted at trial depict conversations between the CI and George and between the CI and Spagnola, and in some instances the courier is present as well. In none of the recordings are George and Spagnola present simultaneously, although in certain recordings George and Spagnola discussed with the CI their conversations with each other regarding the proposed robbery, and in some of the recordings George can be heard speaking on the phone about the robbery with a person that he tells the CI is Spagnola, and vice versa. During these recordings George and

Spagnola discussed with the CI the robbery plan and proposed changes to it, the drug courier and his trustworthiness, the weapons needed for the robbery to succeed, and their plans to sell the stolen cocaine for cash, among other things.

The robbery was scheduled to take place on July 12, 2007. Although the evidence indicated that the original plan was for George to participate in the actual robbery, he backed out on July 12 because, he claimed at the time, he could not find a babysitter for his children. Nonetheless, George stated on July 12, both to Spagnola and to ATF agents after his arrest, that he still expected to receive a portion of the robbery proceeds. Since George could not attend, Spagnola traveled alone with the CI on July 12 to meet the courier in a forest preserve near Cicero, Illinois. Spagnola brought two guns to that meeting which he planned to use in the robbery later that day. Spagnola was arrested by ATF agents in the forest preserve shortly after exiting the CI's car to speak with the courier. George was arrested later that same day in Marseilles, Illinois. Both George and Spagnola gave incriminating post-arrest statements to ATF agents in which they admitted that they agreed to participate in the robbery and planned to sell the stolen cocaine for cash.

After a four-day trial, a jury convicted George of conspiracy to possess, and attempt to possess, with intent to distribute in excess of 5 kilograms of cocaine, both in violation of 21 U.S.C.

§ 841(a)(1). Spagnola, who testified on his own behalf, was convicted of these same two charges as well as possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and 21 U.S.C. § 846, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After the jury rendered its verdict, both Defendants filed motions for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial, pursuant to Federal Rule of Criminal Procedure 33. The pending motions raise several challenges to the sufficiency of the government's evidence of conspiracy and rulings of the Court before and during trial. The Court will examine each of Defendants' arguments in turn.

## II. DISCUSSION

### A. The Sufficiency of the Evidence of a Conspiracy Between Defendants

The Defendants contend that the evidence at trial was legally insufficient to sustain their conspiracy convictions because the government failed to present evidence of an agreement between them. To succeed on a Rule 29 motion for judgment of acquittal, a defendant must show that there was insufficient evidence presented at trial from which any rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir., 2009). The jury's verdict will only be set aside where "the record contains no evidence, regardless of how it is weighed," from which a jury could have

returned a conviction.  *United States v. Moses*, 513 F.3d 727, 733 (7th Cir., 2008) (quoting *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir., 2005).  Similarly, a Rule 33 motion for a new trial should be granted where the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir., 1999).

To prove a drug conspiracy, the government must establish that two or more persons agreed to commit an unlawful act, and that each defendant knowingly and intentionally joined in the agreement.  *United States v. Haynes*, --- F.3d ---, 2009 WL 2959254, at *7 (7th Cir., Sept. 17, 2009).  No overt act is required.  *United States v. Duran*, 407 F.3d 828, 835 (7th Cir., 2005) (citing *United States v. Thornton*, 197 F.3d 241, 254 (7th Cir., 1999).  Two or more persons conspired together if they "embraced a common criminal objective, even if they did not know each other or participate in every aspect of the crime."  *Haynes*, 2009 WL 2959254, at *7.

Here, the jury heard ample evidence of a conspiracy between George and Spagnola.  Although the idea to rob the garage may have originated with the CI, George and Spagnola actively agreed to participate, as demonstrated by the following evidence contained on the recordings presented to the jury:

- After agreeing to participate in the robbery, George recruited Spagnola who also agreed to participate.

- George arranged a meeting between the CI and Spagnola to plan the robbery.

- George told the CI that he planned to pay Spagnola out of his share of the stolen drugs.

- Both George and Spagnola met separately with the courier on separate dates.

- George told the CI that he and Spagnola had modified the robbery plan so that instead of robbing the garage, they would rob and kill the courier after he left the garage so they would not have to share the robbery proceeds with the courier and so that there would be one less witness to their criminal acts.

- George told the CI that Spagnola was willing to commit the robbery and kill the courier.

- George told the CI that he and Spagnola discussed Spagnola's meeting with the courier and that Spagnola told George that he suspected the courier was a law enforcement officer.

- Spagnola told the CI that he and George discussed George's meeting with the courier, that George also suspected the courier was a law enforcement officer, and that George told Spagnola to check the courier's license plate number to ensure that was not the case.

- George told the CI that he and Spagnola discussed obtaining weapons for the robbery and that George accompanied Spagnola to obtain a gun for the robbery.

- During his July 9, 2007, conversation with the CI George spoke with Spagnola over the telephone and then told the CI that he and Spagnola had agreed to meet later that night in person to further plan the robbery.

- George and Spagnola each discussed with the CI their plans to sell the stolen drugs for cash after the robbery.

- Spagnola was arrested during a meeting with the CI and the courier on June 12, 2007, the day the proposed robbery was supposed to occur.

- Spagnola brought two guns to the June 12, 2007, meeting which he intended to use in the robbery.

- Although George did not attend the June 12, 2007, meeting with Spagnola, the CI, and the courier, George still expected a portion of the robbery proceeds as evidenced by George's statements to Spagnola and his post-arrest statements to ATF agents.

In short, the government presented overwhelming evidence of a criminal meeting of the minds between George and Spagnola to rob the drug courier and then sell the stolen drugs for cash. They planned the robbery together, with the CI. George and Spagnola even changed the plan from its original form so that they would obtain a larger share of the robbery proceeds and murder a witness to their robbery. George and Spagnola both met individually with the CI and the courier and discussed their impressions of the courier with each other, including their suspicion that the courier was a law enforcement officer. George and Spagnola went together to obtain guns for the robbery. George and Spagnola both told the CI that they would sell their portion of the stolen drugs for cash. Given this evidence, the jury's verdict on the conspiracy charges was justified.

### B. Challenges to the Court's Rulings Before and During Trial

Defendants challenge a number of the Court's rulings before and during trial and they seek a new trial on that basis. The

Court may order a new trial under Rule 33 when required in the "interest of justice." FED. R. CRIM. P. 33. Generally, in order to obtain a new trial, a defendant must show that his substantial rights have been jeopardized by the Court's errors. *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).

### *1. Defendants Were Not Arraigned on the Superceding Indictment*

Defendants George and Spagnola argue that they are entitled to new trials because they never were formally arraigned on the superceding indictment which listed the charges on which they proceeded to trial. A formal arraignment ensures that a criminal defendant is provided his due process right to be informed of the charges against him and given the opportunity to submit a plea to the court. FED. R. CRIM. P. 10; *see Garland v. State of Washington*, 232 U.S. 642, 646-47 (1914). However, the Supreme Court has long held that the lack of an arraignment does not necessarily require a new trial because an arraignment is "a wholly unimportant formality" when it is clear that the defendant knew the substance of the charges against him. *Garland*, 232 U.S. at 646.

In this case, the charges listed in the superceding indictment are identical to the charges listed in the initial indictment with one exception. The time period alleged in the superceding indictment is shorter than and completely contained within the time period alleged in the initial indictment. Thus, Defendants necessarily had notice of the charges contained in the superceding

indictment because they were contained completely within the charges of the initial indictment, on which Defendants were arraigned. Because Defendants already knew the substance of the charges in the superceding indictment, the fact that they were never arraigned on the superceding indictment is a formality and does not require the Court to order new trials.

### *2. The Court's Refusal to Allow Defendants to Call Certain Witnesses at Trial*

Defendants also complain that they were prejudiced by the Court's refusal to allow them to call the CI as a defense witness. Defendant George complains additionally that he was prejudiced by the Court's refusal to allow him to call as defense witnesses two ATF agents who testified before the grand jury, Agent Markt and Agent Vanderplow. This issue was the subject of a pretrial motion in limine. In its ruling, the Court barred Defendants from calling witnesses solely for impeachment purposes.

The Court has broad discretion to control the admission of evidence against the danger of unfair prejudice, confusion of the issues and misleading the jury. *See* Fed. R. Evid. 403; *United States v. Kahn*, 508 F.3d 413, 417 (7th Cir., 2007). It is black-letter law that a party cannot call a witness simply to impeach him, *United States v. Finley*, 708 F.Supp. 906 (N.D.Ill., 1989), and a defendant cannot call an informant simply to trot out the informant's sordid past in an attempt to sully the prosecution by

association, *United States v. Silva*, 71 F.3d 667, 670 (7th Cir., 1995). The Court gave Defendants an opportunity to explain the relevance of any proposed witness's testimony but they failed to do so with respect to the CI or the ATF agents before or during the trial, and they fail again in their pending motions.

With respect to the CI, Defendant Spagnola argues that the CI would have provided testimony relevant to Spagnola's state of mind. This argument is wholly speculative as Spagnola does not identify what the CI's testimony would have been or how it would have helped his case. In any event, Spagnola chose to take the witness stand and his own testimony indicated his guilt. Spagnola testified that he believed George had put the CI in contact with him, that he planned to rob a garage where he believed at least 30 kilograms of cocaine would be present, and that he brought two guns with him on July 12 in order to ensure the robbery's success. Spagnola has made no showing that the CI's testimony would have been relevant or helpful to his defense and, given Spagnola's own testimony, it is unlikely that the CI's testimony would have affected the jury's verdict.

Defendant George sought to question the CI about the "time, place and content" of a June 8, 2007, unrecorded conversation between himself and the CI, as well as the CI's "inability or unwillingness to record said conversation." The June 8 conversation was not part of the government's case-in-chief and, in

any event, the absence of this June 8 conversation is not prejudicial given the volume and content of subsequent recorded conversations between the CI and George, and George's motion fails to show otherwise. Nor does George explain how the CI's testimony regarding the time, place and content of the June 8 conversation would have helped his defense. Even if George had expressed an unwillingness to participate in the robbery on June 8, he certainly changed his mind afterward, as indicated by his statements in subsequent recordings and his post-arrest statement to ATF agents.

With respect to Agents Markt and Vanderplow, it is clear that Defendants sought to call them solely for improper impeachment purposes and, in any event, their testimony would have been irrelevant. Defendant George sought to call the agents to show that they had previously testified that a recording of the June 8 conversation had existed at one time. As discussed above, whether there was a recording of that conversation, why there was not a recording of that conversation, and even the content of that conversation are all irrelevant issues given the volume and content of subsequent recorded conversations admitted at trial between the CI and George and the CI and Spagnola. Moreover, neither of these agents testified in the government's case-in-chief so their recollections and their credibility are not at issue and are irrelevant.

### *3. The Court's Refusal to Sever the Trials*

Defendant Spagnola argues that the Court erred in refusing to sever his trial from Defendant George's trial and, as a result, he was prejudiced by the admission of George's statements to the CI. Relatedly, George argues that he was prejudiced by Spagnola's trial testimony regarding statements George made to the CI.

The court has discretion to grant severance where the prejudice of joinder outweighs the benefits of a single trial. FED. R. CRIM. P. 14. Nonetheless, it is well established that co-conspirators generally should be tried together. *See United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir., 2006). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Spagnola's argument fails because George's statements to the CI plainly are admissible against Spagnola as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir., 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987)). The Court did not err in admitting them.

George claims he was prejudiced by his joint trial with Spagnola because the Court permitted the jury to hear inadmissible testimony by Spagnola. George argues, "Spagnola had no knowledge

of George's purported statements [to the CI], and allowing Spagnola to testify to those conversations as well as George's state of mind was improper." A review of the trial transcript reveals that Spagnola never testified to George's state of mind. Spagnola did testify to two statements made by George, one to the CI and one to Spagnola. Specifically, Spagnola testified that George had given the CI Spagnola's telephone number.

> Q: [George] introduced you to [the CI], right?
> A: No.
> . . .
> A: My brother – what happened is my brother, I guess, gave him my number, whatnot.
> Q: So, there was no contact with – the only reason there is some kind of contact between you and [the CI] is because George makes that connection; isn't that right?
> A: Yes, sir.

(Trial Tr. at 695.)

George does not identify why this statement was inadmissible. It is not hearsay because the statement was not offered for its truth, but rather to explain Spagnola's understanding of how the CI came to make contact with him. Nor does George explain how he was prejudiced by the admission of this statement. Prejudice is highly unlikely given that the jury heard George's own recorded statements to the CI where he recommended his brother, Spagnola, to assist in the robbery. Thus, the jury was not hearing any new information when Spagnola testified that it was his understanding that George had given the CI his phone number.

The second statement of George's to which Spagnola testified is George's assurance to Spagnola that the CI is trustworthy.

> Q: Your brother told you that you could trust [the CI], correct?
> A: Yes.
> . . .
> A: He told me I can trust him because he trusted him.

(Trial Tr. at 697.) Here again, George fails to establish any reason why this testimony is inadmissible. The testimony is not hearsay because it was elicited by the government, thus making George's statement an admission pursuant to Federal Rule of Evidence 801(d)(2). And the statement obviously was not offered for its truth, that is, the government was not attempting to establish that the CI was, in fact, trustworthy, but rather to establish why Spagnola agreed to participate in the robbery. The admission of Spagnola's testimony was not error and does not warrant a new trial.

### 4. *The Court Erred in not Dismissing the Initial Indictment*

Defendant Spagnola argues that the initial indictment was based upon the perjured testimony of ATF agents and for that reason the Court erred in not dismissing it. The Court fully addressed this issue in its January 21, 2009 ruling on Defendants' joint motion to dismiss the indictment.

Defendants moved to dismiss the initial indictment in November 2008 on the grounds that there was no evidence that George and Spagnola had ever spoken to each other about the alleged scheme

- 14 -

and, thus, no evidence of conspiracy between them, and that the indictment was based upon misstatements by a government witness. In its ruling, the Court found that the sufficiency of the indictment depended not on the government's evidence but on the allegations of the indictment and the initial indictment fairly alleged the elements of conspiracy. Second, with respect to the agent's alleged misstatements, the Court found that the superceding indictment, which did not rely on the alleged misstatements, mooted Defendants' motion under *United States v. Dempsey*, No. 89-CR-666, 1990 WL 139276 (N.D.Ill., Aug. 14, 1990). Defendant Spagnola offers no justification for abandoning the Court's January 21, 2009, ruling and, therefore, his argument with respect to defects in the initial indictment fails.

### *5. The Conduct of Defendant Spagnola's Counsel*

Defendant Spagnola argues, for the first time in his reply brief in support of his pending motion, that his conviction should be vacated because his court-appointed trial counsel, Ronald Clark, was ineffective. Arguments raised for the first time in a reply brief generally are deemed waived. *United States v. Wescott*, 576 F.3d 347, 354 (7th Cir., 2009). However, the Court will consider Spagnola's ineffective assistance of counsel claim since Mr. Clark, the subject of this argument, filed the pending motion on Spagnola's behalf. After filing the motion, Mr. Clark was replaced

and it is his successor counsel who filed the reply brief containing the ineffective assistance of counsel argument.

In support of his argument, Spagnola points to the breakdown of communication between himself and Mr. Clark before and especially during the trial, the fact that Mr. Clark insulted him and called him "dumb" during the trial outside the presence of the jury, and Mr. Clark's failure to prepare Mr. Spagnola for trial adequately. In order to show that counsel's ineffectiveness was so extreme as to constitute a Sixth Amendment "assistance of counsel" violation, a defendant must show (1) that the attorney's conduct was objectively unreasonable and (2) that the deficient representation prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

It is true that Spagnola's relationship with Mr. Clark was troubled. Nonetheless, even if Spagnola could point to any conduct by Mr. Clark that was objectively unreasonable, he has made no showing that he was prejudiced. In other words, even assuming that it was objectively unreasonable for Mr. Clark to fail to review the trial exhibits with Spagnola, fail to explain to Spagnola the nature of the superceding indictment, and fail to prepare Spagnola adequately for his trial testimony, Spagnola fails to make any showing that, absent these failures, the jury would have reached a different verdict. Specifically, he fails to show how the exhibits would have been handled differently, or how he would have testified

differently, had Mr. Clark acted appropriately. Spagnola's failure to show that he suffered any prejudice from Mr. Clark's conduct defeats his ineffective assistance of counsel argument.

### *6. Defendant George's Entitlement to an Entrapment Instruction*

Defendant George complains generally that he was prejudiced by the Court's refusal to issue certain jury instructions and its overruling of his objections to other jury instructions. The only issue George expressly identifies in his motion is the Court's refusal to include a jury instruction explaining entrapment and its viability as a defense in this case. The problem with George's argument, as the Court previously explained in its oral ruling on a pretrial motion in limine on this issue, entrapment was not a defense available to George. The Court's conclusion remains unchanged after trial.

An entrapment defense is only warranted in certain limited circumstances and it is the burden of the defendant seeking the instruction to make a *prima facie* showing that (1) the government induced him to commit the crime and (2) he lacks a predisposition to engage in the criminal conduct of which he is accused. *Mathews v. United States*, 485 U.S. 58, 63 (1988). To meet this burden, a defendant must present sufficient evidence for a rational jury to find that he was entrapped into committing the crime charged. *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir., 1999) (citing *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th

Cir., 1993)). Here, George had adequate opportunity before trial to make a prima facie showing of entrapment and he failed to do so. Accordingly, the Court's refusal to give an instruction to the jury on the entrapment defense was not error.

### III. CONCLUSION

For the reasons stated herein, the Motions for Judgment of Acquittal or, in the Alternative for a New Trial of Defendant George and Defendant Spagnola are denied.

**IT IS SO ORDERED.**

　
　
　
　
　
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:** October 21, 2009